### BLALOCK *et al. v.* BELL.

314

No. 7722.   FEBRUARY 21, 1931.

*Cooley & Cooley,* for plaintiffs.

*G. W. Westmoreland* and *C. L. Bryson,* for defendant.

RUSSELL, C. J.   The petitioners, alleging themselves to be heirs of Joseph L. Blalock, brought a petition to enjoin Ed B. Bell from entering upon certain premises or interfering with the possession of one whom they alleged to be their tenant.   They asserted that the defendant had slandered their title continuously, both orally and in writing, for several years, asserting his right and title to certain described lands, when in fact he had no right or title in the same, and when in fact all right and title to said lands was vested in petitioners.   They prayed that he be required to come into court and show his claims, right, and title; that title be decreed to be in the plaintiffs, etc.   It appeared from the testimony of the ordinary that their grandfather had left a will in which there was a clause by which he devised to his widow (who afterwards intermarried with Sanford Bell and became the mother of Ed B. Bell, the defendant) "four hundred dollars to be expended in land in lieu of her dower out of my present homestead."   The petitioners alleged that their mother remained in possession, and in 1884 executed a deed in which she conveyed to the children of

Josiah L. Blalock the 250 acres of land (of which the premises in dispute are a part) for her life, upon condition that they would pay to her for her support $30 per year; and that these children, by interchanging deeds, conveyed the entire tract in parcels of 50 acres to each other. The record discloses that Josiah L. Blalock left three other children besides those named in the division. What became of these three does not appear from the record. These five appeared to have treated their several parcels as their own, and in 1890 Joe L. Blalock, his wife, Mary Alice Blalock, and Mary C. Blalock, to secure a loan of $300, executed a security deed to the Georgia Loan & Trust Company, conveying to that corporation 105 acres of the original tract of 250 acres. This loan was not paid to the Georgia Loan & Trust Company, but was transferred to Mrs. Park by that company executing to Mrs. Park a quitclaim deed to the property, which deed contained the following stipulation: "This conveyance is made subject to the right of the estate of Miss Mary C. Blalock, of the county of Jackson and State of Georgia, to have said property conveyed to her estate, her heirs, legal representatives, or assigns, upon the terms and conditions set out in its bond for title to the said Miss Mary C. Blalock, dated July 1st, 1890, and mentioned in her deed of same date conveying the above-described property to it, which deed is hereby delivered to the said Mrs. Sarah A. Park." Later, by a quitclaim deed containing the same reservation as to the interest of the estate of Miss Mary C. Blalock, Mrs. Park conveyed this land to Mrs. Mary Alice Blalock, this conveyance being dated April 13, 1899. In February, 1896, Ed B. Lell's mother, Mrs. Susan Bell (also the mother of the Blalocks), executed a warranty deed to Ed B. Bell, setting forth that he was her son, and that for that reason and to make him equal with the other children (the Blalock children) she conveyed to him 52-1/2 acres bounded by certain persons named, who were all of the adjoining landowners. Mrs. Bell was at that time, as she always had been since 1857, in possession of the premises and living in the dwelling-house. The deed was recorded within a few days after its execution. Contemporaneously there was executed an instrument intended for a will, and attested by twelve witnesses, in which she purported to devise the land described in the above deed, and certain furniture and other personal property, to the defendant, Ed B. Bell, at her death. Mrs. Bell remained in possession until her death in 1902.

At the time of the filing of the petition in this case, Ed B. Bell, by right of his claim of title, had taken possession of the dwelling-house or of such portion thereof as he had ejected Doctor Lott from (the person to whom the petitioners had leased the same). Shortly after the filing of the petition Ed B. Bell died. Thereupon his widow made application for the statutory year's support, specifying the premises in dispute as the property of her deceased husband which she desired to be set apart, and by order of court intervened in the case; and D. Bell as administrator of the estate of Ed B. Bell also intervened, claiming that after the granting of the year's support to the widow of Ed B. Bell there still remained 52-1/2 acres of the original 105 acres which had been deeded to the Georgia Loan & Trust Company, which was the property of the intestate. Upon the trial the jury returned a verdict finding for the defendant, Mrs. Ed B. Bell, the 52-1/2 acres set apart to her as a year's support; and the plaintiffs excepted to the overruling of their motion for new trial. There was no finding as to the claim of the administrator or of the plaintiffs, but no exception as to this was taken.

The evidence fails to show that Mrs. Susan Blalock ever applied for dower, that any commissioners were ever appointed; or that any land was ever set apart and assigned to her as dower as the widow of Josiah L. Blalock. The only real circumstance from which an inference could be drawn that Mrs. Blalock elected to take dower, or had placed herself within the rule of the authorities where by her conduct she should be estopped to deny having taken dower instead of a child's part in her husband's estate, is the mere presumption that she was of the opinion that she had no further interest in the land of Josiah L. Blalock than a dower estate; this by reason of the fact that she had conveyed to her Blalock children her life-estate in the land in question. As to this, we think the trial judge was right in holding, as a matter of law, that a contract to convey to another merely the interest of the grantor for his life does not carry with it title to the fee in remainder. We know of no rule of law by which one is not permitted to take into consideration the value of his land during his probable expectancy, as much as he would have to convey a leasehold for a period of ten or twenty years, without thereby transmitting to the grantee in the deed the fee in remainder. We think that this fact, without more,

would certainly not raise a conclusive presumption that the grantor thereby admitted that he did not own title in the fee. For this reason, we are of the opinion that there is no merit in the assignment of error asserting that the court erred in not instructing the jury that they should start from 1884, instead of 1857, as the beginning point of all the evidence in the case as to the possession, or right of possession, of either of the parties in the case. On the contrary we are of the opinion that the trial judge was correct in instructing the jury that it was for them to determine whether or not there was proof of an election, as between a child's part or of dower, by the widow of Josiah L. Blalock. It is very clear, from what we have said, that the evidence did not establish the allegation of the petition that the premises in dispute were in fact a part of the land assigned and set apart to the mother of Ed B. Bell as a dower. The jury were as much authorized to find that the widow took the $400, and with this sum purchased the entire 250 acres. They were not authorized at all to do this, because there is no evidence upon that subject; but, we repeat, they were as much authorized to find that the widow bought the land with the $400 as they were authorized to find that she took dower. There is no evidence to show that she did either or any of these things, but the evidence is undisputed that from 1857 until 1884, twenty-seven years, she was in open, notorious, and adverse possession, under claim of right, of the entire 250 acres; and unless the jury were compelled to find that by selling her life-estate in this land in 1884 she admitted owning only a dower, if she conveyed only her possession for life, she had obtained title by prescription by more than twenty years possession, and she still owned the fee in the 52 acres which she conveyed to Ed B. Bell in 1896. This regardless of the conveyance by Mary C. Blalock and Joseph L. Blalock of what purported to be the fee in 105 acres of this land, since the evidence does not show that she had any interest in the loan of the Georgia Loan & Trust Company, was consulted in regard to it, or participated in respect to it in any way. But the plaintiffs insist that they have been in possession of the land all the time since the death of their mother, Mary Alice Blalock, and thereby Ed B. Bell and his heirs are barred by laches from now asserting any claim. Upon this point the jury heard evidence as to the sanity of Ed B. Bell, and the evidence was certainly sufficient to authorize them to find that

Ed B. Bell was an insane person, and was so considered by most of those who knew him. No objection was made to the admissibility of this testimony; so the plea in bar was not supported by the finding of the jury. We are of the opinion that the evidence authorized the conclusion upon the part of the jury that the title of the plaintiffs was not superior to that of Ed B. Bell, and therefore not superior to the right of his widow and children under the award of the twelve months support.

*Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurs in the result, but not in all that is said in the headnotes and opinion.